IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| RONI LEWIS MEDEARIS, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-15-0345 |
| | § | |
| STEVE MASSIE, *et al.,* | § | |
| | § | |
| *Defendants.* | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Roni Lewis Medearis, a state inmate proceeding *pro se* and *in forma pauperis*, filed this complaint under 42 U.S.C. § 1983 for the alleged violations of prison policies and his constitutional rights by employees of the Texas Department of Criminal Justice ("TDCJ"). He claims that medical employees Lannette Linthicum, M.D., and nurse practitioner Terry Speer refused to examine his prostate gland at the Darrington Unit, which caused him "physical harm because [he] urinate[d] too much" (Dkt. 1 at p. 3).[1] He further complains that administrative employees Steve Massie, J. Keller, and Warden James Danheim denied his prison grievances (Dkt. 1 at p. 15), and that correctional officers Chinwe Enwezor and Abiodun Onasanya twice denied him access to a urinal and drinking water (Dkt. 1 at p. 3). Plaintiff also appears to claim that lack of a working urinal and drinking

---

[1]For his claims against medical staff, plaintiff alleges that his excessive urination was caused by an undiagnosed and untreated enlarged prostate gland. For his claims against prison officers, plaintiff alleges that the excessive urination was caused by his blood pressure medications.

water in the prison day room violate prison policies and his Eighth Amendment rights (Dkt. 1 at p. 19).

At the Court's request, the Office of the Attorney General of Texas, as *amicus curiae*, provided medical and administrative records relevant to plaintiff's claims in a *Martinez* report (Dkt. 16),[2] which the Court construed as a motion for summary judgment on behalf of the defendants (Dkt. 18). Plaintiff filed a timely response to the motion for summary judgment (Dkt. 19).

Having reviewed the motion, the response, the probative summary judgment evidence, and the applicable law, the Court **GRANTS** the motion for summary judgment and **DISMISSES** this lawsuit for the reasons that follow.

## I. BACKGROUND AND CLAIMS

Plaintiff alleges in his complaint that on April 7, 2015, defendant prison nurse practitioner Terry Speer refused to provide him a prostate examination during a chronic care physical, and instead told him to schedule a sick call request. Plaintiff claims that this constituted deliberate indifference to his serious medical needs because his prostate was causing him to urinate excessively, which disrupted his sleep at night. Plaintiff believed that he had an enlarged prostate that required chronic care, and that Speer's failure to address the

---

[2]*See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1987). The report in this case encompasses over 200 pages of medical records, 500 pages of administrative grievance documents, 28 pages of prisoner classification materials, and an affidavit of Stephen Bowers, M.D. The report and records have been filed under seal to protect plaintiff's confidential medical information (Dkt. 18).

condition put him at risk for physical harm (Dkt. 1 at p. 19). He asserts that defendant Lannette Linthicum, M.D. was aware of his need for a prostate examination and medication, but that she took no action on his behalf.

Plaintiff further complains that defendant correctional officers Chinwe Enwezor and Abiodun Onasanya violated prison policy and his Eighth Amendment rights by not providing him access to a urinal and drinking water on two occasions. Plaintiff states that, because the day room lacked drinking water and a functional urinal, he had to rely on Enwezor and Onasanya to provide him access to obtain drinking water and a functional bathroom outside the day room. He complains that the officers' denials of his requests for access on two occasions put him at risk for physical harm (Dkt. 1 at p. 19) because his blood pressure medications caused him to urinate "about seven times an hour" (Dkt. 1 at p.14) or "5 to 10 times within every hour" (Dkt. 19 at p. 3).

Plaintiff states that he submitted several step 1 and step 2 grievances regarding these incidents and conditions, but that Steve Massie, J. Keller, and Warden Danheim denied the grievances without remedying plaintiff's complaints.

Plaintiff seeks declaratory and injunctive relief and $22 million in compensatory and punitive damages.

## II. **STANDARDS OF REVIEW**

A.     *Pro Se* **Prisoner Litigants**

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by federal law to scrutinize his claims and dismiss the complaint, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A *Martinez* report submitted by state officials, as was done in this case, is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292–93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

In reviewing the pleadings, the Court is mindful of the fact that the plaintiff in this case proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded," must be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even under this lenient standard, however, a *pro se* plaintiff must allege more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

## B. Summary Judgment – Rule 56

The Court construed the *Martinez* report as a motion for summary judgment (Dkt. 25). Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, a court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Nor do unsubstantiated assertions, improbable inferences, or unsupported speculation stand as competent summary judgment evidence. *Id.*

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

Although the plaintiff in this case is proceeding *pro se*, the notice afforded by the Federal Rules of Civil Procedure and the local rules is considered sufficient to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *See Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 (5th Cir. 2016); *see also E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (noting that *pro se* litigants must fundamentally abide by federal court rules and properly present summary judgment evidence).

### III. DISCUSSION

#### A.    Eleventh Amendment Immunity

The defendants in this case are sued for actions taken during the course of their employment with TDCJ, a state agency. Thus, to the extent plaintiff seeks monetary damages against the defendants in their official capacities, his claims are barred by the Eleventh Amendment and are **DISMISSED WITH PREJUDICE**. *See Oliver v. Scott*, 276

F.3d 736, 742 (5th Cir. 2001); *Aguilar v. Texas Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998).

### B.  Prostate Examination and Medication

Plaintiff claims that defendants Speer and Linthicum were deliberately indifferent to his need for a prostate examination and medication, and that their denial of care caused him substantial risk and serious harm.  Underlying his claim is his belief that he had an undiagnosed enlarged prostate and that the defendants refused to provide medical care and treatment necessary to remedy the condition.

As an inmate, plaintiff had a clearly established Eighth Amendment right not to be denied, by deliberate indifference, attention to his serious medical needs.  *See Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006).  Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they evince deliberate indifference to a prisoner's serious medical needs, resulting in unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Deliberate indifference to a prisoner's serious medical needs raises a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989).

Negligence or medical malpractice, however, is not an issue of federal constitutional dimension.  In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere negligence.  The Court held that a prison official cannot be found liable under the Eighth Amendment unless the official knows of and

7

disregards an excessive risk to inmate health or safety; that is, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Id.* at 837. The Eighth Amendment deliberate indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998).

It is indisputable that an incorrect diagnosis by medical personnel will not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Nor is the failure to alleviate a significant risk that medical personnel should have perceived, but did not, sufficient to demonstrate deliberate indifference. *Farmer*, 511 U.S. at 838; *see also Blank v. Bell*, 634 F. App'x 445, 448 (5th Cir. 2016) ("[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should have been perceived, but was not, is sufficient to establish deliberate indifference."). Rather, a showing of deliberate indifference requires a prisoner to submit evidence establishing that medical personnel "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks omitted).

In support of the motion for summary judgment, the defendants submitted the affidavit

of TDCJ employee Steven Bowers, M.D., who testified as follows:

> My name is Steven Bowers, M.D. I am over the age of 18 years, and am
> competent to make this affidavit and have personal knowledge of the facts
> herein stated. I earned my Doctor of Medicine in 1973 from the University of
> Texas Southwestern Medical School. I am licensed as a medical doctor by the
> Texas Medical Board. I am currently the Legal Coordinator for the University
> of Texas Medical Branch Correctional Managed Care (UTMB/CMC). In the
> last four years I have not testified as an expert at trial or by deposition. I have
> been with UTMB/CMC since December 1, 2002. My education and work
> experience are outlined in my curriculum vitae, which is attached hereto as
> Exhibit 1.

> I am making this affidavit in connection with Civil Action No. 3:15-cv-00345,
> *Roni Medearis v. Steve Massie, et al.*, in the United States District Court for
> the Southern District of Texas, Galveston Division. To prepare this affidavit,
> I have reviewed the medical records of Roni Medearis, TDCJ #01530043 from
> April 1, 2014 through October 4, 2015 and Plaintiff's Complaint. I am
> familiar with UTMB/CMC policies and procedures with respect to the
> provision of medical care. I am not receiving any pay, save my usual salary,
> for review of records or preparation of this report.

> Roni Medearis alleges that he is a chronic care patient and that his inadequate
> restroom and water breaks have resulted in substantial risk and serious harm.

> Medical Record Review:

> 9/20/2017

> Medical Summary on inmate Roni Medearis, TDCJ#[0]1530043 Darrington
> Unit

> Reviewing the medical record from 4/1/14 through 10/14/15, out of
> approximately 19 sick call requests by the patient, there are three that pertain
> to the prostate complaint. On 12/13/14 he requested a prostate exam. On
> 12/22/14 he requested medication for a swollen prostate and arthritis. Finally,
> on 4/30/15 he requested medication for an enlarged prostate.

9

Dr. Edgar Hulipas, M.D. saw him for Chronic Care Clinic exam on 4/11/14 and there was no mention of prostate problems. On 5/14/14, Dr. Hulipas saw him again and there was no mention of prostate problems. A chart review of Mr. Medearis on 6/12/14 by Dr. Hulipas revealed no mention of prostate problems.

On 4/7/15, N.P. Terry Speer saw the patient for his Chronic Care exam and the patient was without healthcare complaints. All patient questions and concerns were answered. The patient signed a refusal for a Digital Rectal Exam which includes a prostate exam.

Again, on 10/14/15, N.P. Speer did a complete exam on the patient and a normal rectal including the prostate was normal.

In summary, there has been no prostate problem found and diagnosed in the patient during the relevant time period.

Based upon my education, training, and experience as a physician both in the community and correctional settings, I believe that the medical treatment/care provided to Mr. Medearis was both appropriate and performed within the proper standard of care. I believe any other reasonably well-trained nurse practitioner, under the same or similar circumstances and knowing what the defendant knew at the time, would have provided the same treatment/care and believed that doing so was responsible and done in good faith.

The above opinion is based upon my review of the materials provided and reasonable medical probability. I reserve the right to amend this affidavit should additional information become available.

(Dkt. 16, Exhibit D).

The medical records submitted in the *Martinez* report (Dkt. 16, Exhibit B) substantiate Dr. Bower's analysis of the plaintiff's course of medical care from April 1, 2014, through October 14, 2015. Plaintiff was provided a PSA (prostate antibody) test in December 2014, which yielded normal results (Dkt. 16-1 at p. 125). Plaintiff twice requested a prostate examination and medication in December 2014, for no other stated reason than he was

"aging" (Dkt. 16-1 at pp. 166–67). No complaints of prostate symptoms appear in the medical records. Plaintiff was offered a digital rectal examination ("DRE") at his physical exam on April 4, 2015, but he declined the examination in writing (Dkt. 16-1 at p. 8). With plaintiff's consent, a DRE was undertaken on October 14, 2015, which revealed a normal, non-enlarged prostate gland (Dkt. 16-1 at p. 52). Plaintiff's professed need for "prostate medication" was unfounded, and none was provided. The medical records evince no complaints by plaintiff of "excessive urination," disruptive nighttime urination, or needing to urinate "about seven times an hour" (Dkt. 1 at p.14) or "5 to 10 times within every hour" (Dkt. 19 at p. 3).

Plaintiff proffers no probative summary judgment evidence controverting his medical records and the results of the prostate examination, and no deliberate indifference to his serious medical needs is shown. Although plaintiff alleges that he reported his excessive urination to Speer at the chronic care examination on April 7, 2015 (Dkt. 16-2 at p. 292), the medical record for the appointment reflects that plaintiff reported "no healthcare related complaints" (Dkt. 16-2 at p. 298). In responding to plaintiff's step 1 grievance against Speer, defendant Keller stated as follows:

> Review of the 4/7/15 Chronic Care Note shows that you were being seen for hypertension and hyperlipidemia. No other issues were noted that day. Review of your medical record for the prior 90 days shows that no Sick Call Requests were received from you regarding a prostate exam. You are encouraged to submit a SCR via the established SCR process for any medical issue you wish reviewed.

(Dkt. 16-2 at p. 292). After receiving this response, plaintiff submitted a step 2 grievance and received the following response from an unidentified medical grievance officer:

> A review of the Step 1 medical grievance was completed regarding your complaint you have been denied appropriate examination of your prostate during your Chronic Care Clinic (CCC) on 4/7/15. You stated you have to urinate frequently, especially at night, and the provider ignored your concern.
>
> Review of the health record indicated you were being seen at the Hypertension Clinic. This CCC is for your blood pressure issues. It is not a complete physical examination. You were advised in the response offered at Step 1 to submit a Sick Call Request (SCR) or I-60 to be scheduled for your concerns regarding your prostate. There is no documentation medical has received a request for this issue. While you maintain the right to refuse any services offered, you do not have the liberty to dictate what medications, treatments, or appointments will be prescribed. You are encouraged to work with the medical providers and staff to ensure the best outcome for your health care needs. Appellate review supports the response offered at Step 1.

(Dkt. 16-2 at p. 291).

Nothing in the record establishes that defendants Linthicum and Speer refused to treat plaintiff, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. *See Gobert*, 463 F.3d at 346. Indeed, the results of defendant Speer's physical examination of plaintiff on October 14, 2015, revealed a normal, non-enlarged prostate gland.

Moreover, in order to prevail on his claim, plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193–94 (5th Cir. 1997); *Alexander v. Tippah County, Miss*, 351 F.3d 626, 630–31 (5th Cir. 2003).

Additionally, 42 U.S.C. § 1997e(e) precludes monetary recovery "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" Plaintiff presents no probative summary judgment evidence establishing that he was physically injured as a result of not having a prostate examination on April 7, 2015.

The defendants are entitled to summary judgment dismissal of plaintiff's claims for deliberate indifference to his serious medical needs regarding a prostate examination and medication, and the claims are **DISMISSED WITH PREJUDICE**.

### B.     Violation of TDCJ Day Room Policies and Regulations

Plaintiff further complains that the defendants violated TDCJ policies and regulations by not having drinking water and a functional urinal available in the day room. Plaintiff presents no probative summary judgment evidence establishing that TDCJ policies or regulations required the day room on his unit wing to be equipped with a functional urinal and drinking water.

Even assuming such policy were to exist, plaintiff's allegation, standing alone, is insufficient to demonstrate a constitutional violation. *See Jackson v Cain*, 864 F.2d 1235, 1251–52 (5th Cir. 1989) (noting that a state's failure to follow its own rules or regulations, alone, does not establish a constitutional violation); *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986) (per curiam) (rejecting an inmate's claim that TDCJ's mere failure to follow an administrative rule violated his constitutional rights). Plaintiff does not show that

the prison's alleged failure to comply with its own policy or regulation in this instance constituted a violation of his Eighth Amendment rights.

As stated earlier, 42 U.S.C. § 1997e(e) precludes monetary recovery "for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" Neither plaintiff nor the medical records establish that he sustained any physical injury as a result of the day room's lack of a working urinal or drinking water, and his claim for compensatory damages is barred by section 1997e(e).

Given a liberal construction, plaintiff's allegations as to these day room deficiencies raise a claim for unconstitutional conditions of confinement; his claim, however, is without support in the record. Complaints about prison conditions are analyzed under the Eighth Amendment which proscribes cruel and unusual punishment. While the Eighth Amendment does not prohibit punishment, it does prohibit cruel and unusual punishment including the unnecessary and wanton infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Additionally, while the Eighth Amendment does not mandate comfortable prisons, it does not permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999).

Two requirements must be met before section 1983 liability will arise for constitutional violations regarding conditions of confinement. First, there is an objective requirement that the plaintiff demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Second, under a subjective

standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Id.* "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." *Farmer*, 511 U.S. at 834. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Extreme deprivations are required to state a conditions of confinement claim. *See Hudson v. McMillan*, 503 U.S. 1, 9 (1992).

In the instant case, plaintiff does not, and by his own pleadings cannot, claim that he lacked access to drinking water or a functional urinal while in the day room. To the contrary, his pleadings clearly show that he had access to these necessities in rooms located adjacent to the day room. That he had to exit the day room to urinate or obtain drinking water does not constitute conditions so serious as to deprive him of the minimal measure of life's necessities. *See Farmer*, 511 U.S. at 834. Plaintiff may be clearly inconvenienced by the day room's shortcomings, but this inconvenience simply does not rise to the level of an Eighth Amendment violation.

Furthermore, in order to prevail on his claim, plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193–94 (5th Cir.

1997); *Alexander v. Tippah County, Miss*, 351 F.3d 626, 630–31 (5th Cir. 2003). Plaintiff alleges no specific injury resulting from the complained of conditions, nor does any specific related injury appear in his medical records.

Defendants are entitled to summary judgment dismissal of plaintiff's claims regarding lack of drinking water and a functional urinal in the day room, and the claims are **DISMISSED WITH PREJUDICE**.

### C.    Refusals to Open or Unlock Doors

Plaintiff states that in order to urinate and obtain drinking water while using the day room, prisoners on his unit wing exited the day room and used bathroom facilities located in adjacent empty rooms, which were usually left open and unlocked for that purpose. Plaintiff's grievances show that on two separate occasions, defendant correctional officers Enwezor and Onasanya refused plaintiff's requests to open or unlock a door for restroom purposes. According to plaintiff, the officers' refusals put him at risk for physical harm (Dkt. 1 at p. 19).

Regarding the first incident, plaintiff complained in the relevant grievances that, on February 15, 2015, between 3:00 p.m. and 3:22 p.m., defendant Enwezor allegedly failed to follow written "ingress and egress" procedures on plaintiff's wing. As a result, plaintiff was unable to urinate before "count" began, when all prisoner movement had to cease while officials took head counts of the prisoners (Dkt. 16-2 at pp. 281–82). He contends that Enwezor refused to open the door to an adjacent room so that plaintiff could use the urinal.

In responding to prison officials' investigation of plaintiff's grievance, defendant Enwezor stated as follows:

> They use [the adjacent empty cell] as their urinal because their urinal in the day room is broken. Whenever I am doing count, I close [the cell] because if I leave it open it will obstruct my count. I did my in and out as I am required to do.

(Dkt. 16-2 at p. 285).

> In answering plaintiff's grievances, TDCJ officials stated that

> Your grievance was investigated and disclose [*sic*] that during count time all movement ceases while count is being conduct[ed]. Furthermore, pursuant to [policy], any cell door that is open during count time will be closed. There is no policy violation noted. No further action [is] warranted.

(Dkt. 16-2 at p. 282). Thus, in this incident, the defendant officer refused to open a door because it was "count," during which time prisoners are counted and all activities and movements must cease according to prison policy and regulations. Plaintiff did not allege in his step 1 grievance that the officer violated his Eighth Amendment rights or that he was in any way harmed as a result of the incident (Dkt. 16-2 at pp. 281–282).

As to the second incident, plaintiff complains that at 4:15 p.m. on September 8, 2015, defendant correctional officer Onasanya refused plaintiff's request to open the day room door so he could use the bathroom in the adjacent empty room (Dkt. 16-2 at p. 363). In responding to grievance officials' investigation of plaintiff's grievance, defendant Onasanya stated as follows:

> I do [*sic*] not open the day room because the officer was not with her run key. For the safety of the officer I told them to wait till the line boss have her keys. There was an incident on the run whereby an offender fought with Sgt. and officer because the offender has [*sic*] a phone.

(Dkt. 16-2 at p. 368). Thus, in this second incident, the defendant officer refused to allow plaintiff to leave the day room because there had been a fight and the "line boss" had left the area with the run key. Prison officials denied plaintiff's step 1 and step 2 grievances, finding that defendant Onasanya had acted properly within policy and procedure guidelines. (Dkt. 16-2 at pp. 362, 364). Regardless, plaintiff did not allege in his step 1 grievance that the officer violated his Eighth Amendment rights or that he was in any way harmed as a result of the incident (Dkt. 16-2 at pp. 363–364).

For neither of these two incidents does plaintiff present probative summary judgment evidence establishing that the officers' refusals to open the doors constituted a violation of his Eighth Amendment rights. In particular, nothing in the record shows that the officers knew of and disregarded an excessive risk to plaintiff's health or safety; that is, that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that they actually drew such inferences. *Farmer*, 511 U.S. at 837.

Moreover, in order to prevail on his claim, plaintiff must demonstrate not only that he was exposed to a substantial risk of serious harm, but that he actually suffered some harm that was more than *de minimis*. *See Siglar v. Hightower*, 112 F.3 191, 193–94 (5th Cir. 1997); *Alexander v. Tippah County, Miss*, 351 F.3d 626, 630–31 (5th Cir. 2003). Additionally, 42 U.S.C. § 1997e(e) precludes monetary recovery "for mental or emotional

injury suffered while in custody without a prior showing of physical injury[.]" Plaintiff presents no probative summary judgment that the officers' actions in each instance caused him physical injury, nor do his medical records evince any resulting physical injury. Although plaintiff may have been temporarily inconvenienced or uncomfortable during the incidents, this inconvenience or discomfort falls well short of constituting cruel and unusual punishment under the Eighth Amendment.

Defendants Enwezor and Onasanya are entitled to summary judgment dismissal of plaintiff's claims against them, and the claims are **DISMISSED WITH PREJUDICE**.

### D.    Denial of Grievances

Plaintiff complains that TDCJ administrative employees Steve Massie, J. Keller, and Warden James Danheim violated his constitutional rights by denying his grievances. His allegations raise no colorable claim for relief under section 1983. Prisoners do not have a federally protected liberty interest in having their administrative grievances investigated, processed, or resolved to their satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005); *see also Hill v. Walker*, 718 F. App'x 243, 250 (5th Cir. Jan. 19, 2018) (holding that a section 1983 due process claim for failure to investigate grievances is indisputably meritless). That plaintiff was dissatisfied with the results of his prison grievances does not give rise to a viable section 1983 claim for relief. Further, plaintiff again fails to allege facts establishing a resulting physical injury for purposes of monetary compensation under section 1997e(e).

Defendants Massie, Keller, and Danheim are entitled to summary judgment dismissal of plaintiff's claims against them, and the claims are **DISMISSED WITH PREJUDICE**.

## IV. <u>STATE LAW CLAIMS</u>

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental or pendant jurisdiction over a state law claim when it has dismissed all claims over which it has original jurisdiction. *See also Enochs v. Lampasas County*, 641 F.3d 155, 161 (5th Cir. 2011) (explaining that the rule in the Fifth Circuit "is to dismiss state claims when the federal claims to which they are pendent are dismissed" and citing cases that support the policy under the relevant considerations discussed in *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)).

Consideration of the relevant factors of judicial economy, convenience, fairness, and comity, particularly in light of the early stage of this case, suggests against this Court's exercise of pendant jurisdiction over any state law claims raised by plaintiff. The Court's dismissal of plaintiff's federal section 1983 claims supports such conclusion.

Accordingly, the Court declines to exercise supplemental or pendant jurisdiction over any state law claims raised by plaintiff in this lawsuit.

## V.  CONCLUSION

Defendants' motion for summary judgment (Dkt. 16) is **GRANTED**, and this lawsuit is **DISMISSED WITH PREJUDICE**.  Any and all pending motions are **DENIED AS MOOT**.

The Clerk is directed to provide a copy of this Memorandum Opinion and Order to the parties and to amicus counsel of record for the defendants.

Signed at Galveston, Texas, on _____ August 1 _____, 2018.


_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE